**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Kona,* Slip Opinion No. 2016-Ohio-7796.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-7796

THE STATE OF OHIO, APPELLEE, *v.* KONA, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Kona,* Slip Opinion No. 2016-Ohio-7796.]**

*When in accordance with the requirements of a pretrial diversion program a noncitizen defendant admits sufficient facts to warrant a finding of guilt, the trial court must provide to the defendant the advisement contained in R.C. 2943.031(A) that the admission of guilt may affect his or her immigration status.*

(No. 2014-0733—Submitted June 10, 2015—Decided November 21, 2016.)

APPEAL from the Court of Appeals of Cuyahoga County,

No. 100191, 2014-Ohio-1242.

_____

**PFEIFER, J.**

{¶ 1} In this case, we hold that when in accordance with the requirements of a pretrial diversion program a noncitizen defendant admits sufficient facts to warrant a finding of guilt, the trial court must provide to the defendant the

advisement contained in R.C. 2943.031(A) that the admission of guilt may affect his or her immigration status, i.e., that it "may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."

**Factual and Procedural Background**

{¶ 2} Defendant-appellant, Issa Kona, is not a United States citizen but has been a legal resident since 2002. On April 1, 2006, Kona was arrested for allegedly attempting to steal a battery charger worth around $80 from a Home Depot store in Cleveland. The police report states that he was followed out of the store by security guards, who demanded the battery charger, and that a physical confrontation ensued with at least one of the guards.

{¶ 3} On May 2, 2006, Kona was indicted by the Cuyahoga County Grand Jury on two counts of robbery pursuant to R.C. 2911.02. R.C. 2911.02 reads:

> (A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
>
> (1) Have a deadly weapon on or about the offender's person or under the offender's control;
>
> (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;
>
> (3) Use or threaten the immediate use of force against another.

The bill of particulars filed by the state on June 8, 2006, alleged that Kona had, in committing or fleeing from the commission of a theft offense, inflicted, attempted to inflict, or threatened to inflict harm on someone and also had used or threatened the immediate use of force on that same person. Kona pleaded not guilty; he sought

2

guidance from an immigration attorney and was advised that attempted robbery and theft are offenses for which he could be deported if convicted.

{¶ 4} On September 20, 2006, the day that trial was set to begin, the court granted Kona a continuance to apply for the Cuyahoga County diversion program. On October 30, 2006, with the approval of the prosecuting attorney, the trial court admitted Kona into the diversion program. The entry read:

> In accordance with the provisions of R.C. 2935.36, the prosecutor's office has found that the defendant has met eligibility requirements for acceptance into the Cuyahoga County pretrial diversion program.
>
> * * *
>
> In all cases admitted into the diversion program, the defendant shall be granted a $1000.00 personal bond (CSR), and shall be placed under the supervision of the probation department's court supervised release program/diversion unit.
>
> Upon consideration, the court hereby approves the defendant's participation in said program, and orders that this case to [sic] be placed in an inactive status until further notice.

{¶ 5} The trial court spoke only through its entry; Kona was not brought before the judge into open court. There was no mention in the entry about any possible effect on Kona of enrollment in the diversion program as far as possible deportation, exclusion from admission to the United States, or denial of naturalization.

{¶ 6} As a prerequisite of participating in the diversion program, Kona was required to complete a diversion packet. One document in the packet, titled "Criteria for Acceptance," required him to "admit his guilt, in regard to the pending

charges, in a written statement." The document he executed to satisfy this requirement was titled "Admission of Guilt Statement," and contained Kona's name and criminal-case number. The document provided this instruction:

> You are to provide a complete, accurate, and truthful statement concerning your present criminal charge(s). This statement must admit to the crimes for which you are charged.

**{¶ 7}** Kona's statement read:

> On April 1, 2006, I entered the Home Depot located at 11901 Berea Road, Cleveland, Ohio and took a battery charger, removed it from its package, and hid it in my coat. I purchased a window for $180.00 and exited the store.
>
> As I left the store, I was confronted and apprehended by three (3) store security men. The battery charger was found in my coat and recovered.
>
> The total value was $59.00.

**{¶ 8}** Another document in the diversion packet, titled "General Rules," informed Kona that should he not abide by all of the conditions of the diversion agreement, his case would be brought to court as if he had not participated in the diversion program and the state would have the right to use the written admission of guilt in its case against him. The diversion packet also contained a waiver-of-rights form, but that form contained no information regarding any possible effect that participation in the diversion program might have on his immigration status.

**{¶ 9}** Kona successfully completed the diversion program, and on May 4, 2007, the trial court, upon the state's recommendation, dismissed the case against

Kona; further, the court granted Kona's motion for expungement and sealed the record.

{¶ 10} But Kona's admission of guilt had consequences. Kona later learned that under federal immigration law, an admission of guilt made pursuant to a diversion program can constitute a conviction affecting immigration status. 8 U.S.C. 1101(a)(48)(A). After the dismissal, Kona had submitted an application for naturalization and was advised by immigration officials that he would be subject to deportation upon the final processing of his application due to the admission of guilt he had signed as part of the pretrial diversion program. Kona testified that after learning the effect of his admission of guilt, he consulted with several immigration lawyers, who advised him that the only way to avoid deportation would be to withdraw the admission of guilt and have the conviction vacated.

{¶ 11} Kona filed a motion to unseal the record, to which the state filed a brief in opposition. But the trial court granted the motion on September 10, 2008. Then, on October 20, 2008, Kona filed a motion to vacate his plea. In a journal entry of February 25, 2009, the trial court ordered Kona to file a supplemental motion within 21 days. He filed that motion on March 6, 2009, and the state filed its response on March 25, 2009.

{¶ 12} On April 21, 2009, the trial court held a hearing. Kona argued that his admission of guilt operated as a conviction under federal law and that he was entitled to all the protections he would have been afforded had he actually entered a guilty plea, including those protections under Crim.R. 11 and R.C. 2943.031. R.C. 2943.031(A) requires courts to alert noncitizens that a guilty plea or no-contest plea, "may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."

{¶ 13} The state argued that R.C. 2943.031 does not require a trial court to advise a defendant entering a pretrial diversion program of possible immigration

consequences.  Since Kona had not entered a plea of guilty or no contest, the state argued, the trial court had not been required to follow Crim.R. 11 or R.C. 2943.031.

{¶ 14} On July 2, 2013, the trial court, in an entry without any analysis, denied Kona's amended motion to withdraw his plea and vacate the judgment. Kona appealed to the Eighth District Court of Appeals.  That court stated, "Although we sympathize with Kona and agree that the application of the immigration laws in his case result in a manifest injustice, we cannot agree with him that the trial court erred here."  2014-Ohio-1242, ¶ 19.  The court concluded that "because Kona did not enter a plea of guilty or no contest as part of his pretrial diversion program, the trial court was not required to follow the mandates of Crim.R. 11 and R.C. 2943.031. * * * A trial court cannot withdraw a plea that was never entered into, nor can it vacate a conviction that does not exist."  *Id.* at ¶ 22.

{¶ 15} The cause is before this court upon the allowance of a discretionary appeal. 140 Ohio St.3d 1414, 2014-Ohio-3785, 15 N.E.3d 883.

**Law and Analysis**

{¶ 16} For a noncitizen, the most significant aspect of a criminal conviction may not be the resulting criminal sanction but the conviction's effect on immigration status. "[D]eportation is an integral part—indeed, sometimes the most important part—of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes." (Footnote deleted.)  *Padilla v. Kentucky*, 559 U.S. 356, 364, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010).  R.C. 2943.031 recognizes the seriousness of possible effects of convictions on noncitizens; it requires a trial court, before it accepts a defendant's plea, to advise the defendant on the possibility of "deportation, exclusion from admission to the United States, or denial of naturalization" resulting from the plea.  The statute reads:

(A) Except as provided in division (B) of this section, prior to accepting a plea of guilty or a plea of no contest to an indictment,

6

information, or complaint charging a felony or a misdemeanor other than a minor misdemeanor if the defendant previously has not been convicted of or pleaded guilty to a minor misdemeanor, the court shall address the defendant personally, provide the following advisement to the defendant that shall be entered in the record of the court, and determine that the defendant understands the advisement:

"If you are not a citizen of the United States, you are hereby advised that conviction of the offense to which you are pleading guilty (or no contest, when applicable) may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."

Upon request of the defendant, the court shall allow him additional time to consider the appropriateness of the plea in light of the advisement described in this division.

R.C. 2943.031.

{¶ 17} The statute requires that the advisement be given to every defendant making a plea of guilty or no contest, unless the defendant has stated orally on the record that he is a citizen of the United States or has answered a written question on the form on which he enters a plea of guilty that he is a citizen of the United States. R.C. 2943.031(B).

{¶ 18} If the trial court fails to give the advisement and immigration implications arise from the plea, the court must allow the defendant to withdraw his plea. R.C. 2943.031(D) sets forth the circumstances under which the court must accept the withdrawal of the plea:

Upon motion of the defendant, the court shall set aside the judgment and permit the defendant to withdraw a plea of guilty or

no contest and enter a plea of not guilty * * * if * * *the court fails to provide the defendant the advisement described in division (A) of this section, the advisement is required by that division, and the defendant shows that he is not a citizen of the United States and that the conviction of the offense to which he pleaded guilty or no contest may result in his being subject to deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.

{¶ 19} In *State v. Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, 820 N.E.2d 355, this court held that motions to withdraw pleas under R.C. 2943.031(D) after sentencing has occurred are not subject to the Crim.R. 32.1 standard that requires a defendant to demonstrate manifest injustice before a court may permit him to withdraw his plea. "The General Assembly has apparently determined that due to the serious consequences of a criminal conviction on a noncitizen's status in this country, a trial court should give the R.C. 2943.031(A) warning and that failure to do so should not be subject to the manifest-injustice standard even if sentencing has already occurred." *Id.* at ¶ 26. R.C. 2943.031 creates "a substantive statutory right for certain criminal defendants and that * * * right therefore prevails over the general procedural provision of Crim.R. 32.1." *Id.* at ¶ 27. R.C. 2943.031 provides an independent procedure, available after judgment, allowing a challenge to a substantive defect in the underlying proceedings.

{¶ 20} The vacation of a plea pursuant to R.C. 2943.031(D) has important consequences in immigration proceedings; because it concerns a procedural or substantive defect in the underlying conviction, the vacation is recognized for immigration purposes. A vacation for procedural or substantive reasons addresses the validity of the underlying conviction and eliminates the criminal ground for deportation. On the other hand, "[i]f the criminal record is expunged or dismissed

because of post-conviction behavior such as successfully completing probation, or for rehabilitative purposes, then the federal immigration agencies do not recognize the expungement or dismissal as erasing the conviction." Andrew Moore, *Criminal Deportation, Post-Conviction Relief and the Lost Cause of Uniformity*, 22 Geo.Immigr.L.J. 665, 668 (2008).

**{¶ 21}** In *In re Adamiak*, 23 I. & N. Dec. 878 (BIA 2006), the Board of Immigration Appeals addressed the case of an Ohio permanent resident who faced immigration consequences—removal from the country as an alien convicted of an aggravated felony—as a result of a guilty plea he had made to a drug-trafficking offense. During the course of the immigration proceedings, Patryk Adamiak sought to withdraw his guilty plea through the procedure outlined in R.C. 2943.031, and the trial court granted the withdrawal of the plea. An immigration judge, however, held that the withdrawal of the plea had no effect for immigration purposes because Adamiak had been convicted of a felony under the definition of a "conviction" in 8 U.S.C. 1101(a)(48), and she found him removable as charged. *Adamiak* at 879.

**{¶ 22}** But the board reversed the decision of the immigration judge, concluding that "the court's vacation of that conviction should be recognized for immigration purposes" and that the conviction should no longer be considered valid. *Id.* at 881. The board noted that it views vacation of convictions for procedural defects differently from other postconviction vacations:

> In our decisions addressing the effect of State court orders vacating convictions, we have distinguished between situations in which a conviction is vacated based on post-conviction events, such as rehabilitation, and those in which a conviction is vacated because of a defect in the underlying criminal proceedings

*Id.* at 879.

**{¶ 23}** The board explained that it recognized the vacation of Adamiak's conviction because the vacation was related to a defect in the underlying proceedings and did not result from the rehabilitation of Adamiak or an attempt by the trial court to help him avoid immigration hardships. The board held:

> The Ohio court's order permitting withdrawal of the respondent's guilty plea is based on a defect in the underlying proceedings, i.e., the failure of the court to advise the respondent of the possible immigration consequences of his guilty plea, as required by Ohio law. To remedy the defect in the original proceedings, the trial court ordered that the respondent be afforded a new trial on the underlying drug trafficking charge. Under these circumstances, we find that the Ohio court's vacation of the respondent's conviction should be recognized in immigration proceedings.

*In re Adamiak*, 23 I. & N. Dec. at 879-880.

**{¶ 24}** The Sixth Circuit Court of Appeals has also adopted this view:

> [W]hen a court vacates an alien's conviction for reasons solely related to rehabilitation or to avoid adverse immigration hardships, rather than on the basis of a procedural or substantive defect in the underlying criminal proceedings, the conviction is not eliminated for immigration purposes. *Matter of Pickering,* 23 I & N Dec. 621, 624 (BIA 2003). This interpretation of the law is consistent with that of other circuits and with our own interpretation. A conviction vacated for rehabilitative or immigration reasons remains valid for

immigration purposes, while one vacated because of procedural or substantive infirmities does not.

*Pickering v. Gonzales*, 465 F.3d 263, 266 (6th Cir.2006). The policy reasons for creating the distinction between convictions vacated for procedural or substantive reasons and other rehabilitative or immigration reasons "are rooted in Congress's desire to achieve uniformity in the treatment of criminal behavior for deportation purposes and to prevent state judges and prosecutors from defeating federal immigration policy by providing ameliorative relief through changes to the criminal record." Moore, *Criminal Deportation, Post-Conviction Relief and the Lost Cause of Uniformity*, 22 Geo.Immigr.L.J. at 665.

{¶ 25} This disparate treatment of vacated convictions follows from the development of the definition of "conviction" in federal immigration law. "Over the years, the BIA has wrestled with the question of when a 'conviction' occurred under state statutes providing for varying degrees of deferred adjudication." *Murillo-Espinoza v. Immigration & Naturalization Serv.*, 261 F.3d 771, 774 (9th Cir.2001). The board described the problem in *In re Ozkok*, 19 I. & N. Dec. 546, 550-551 (BIA 1988):

> [T]he Board has attempted over the years to reconcile its definition of a final conviction with the evolving criminal procedures created by the various states. Having reviewed our decisions in this regard, we must acknowledge that the standard which we have applied to the many variations in state procedure may permit anomalous and unfair results in determining which aliens are considered convicted for immigration purposes. * * *
>
> We find no rational or legal reason for according * * * aliens different immigration status based on the criminal procedures of the

states where they committed a crime. Under the approach we have taken in the past, form has been placed over substance, and aliens who are clearly guilty of criminal behavior and whom Congress intended to be considered "convicted" have been permitted to escape the immigration consequences normally attendant upon a conviction.

**{¶ 26}** Out of concern that a more uniform approach was needed to determine what would constitute a conviction for immigration purposes, the court in *Ozkok* adopted a three-part test under which an alien was considered "convicted" when "(1) the alien had been found guilty or pleaded guilty or nolo contendere or had admitted sufficient facts to warrant a finding of guilty; (2) the judge had ordered some form of punishment; and (3) a judgment of guilt could be entered without further proceedings relating to guilt if the person violated terms of his probation or other court order." *Murillo-Espinoza* at 774*, citing *Ozkok* at 551-552.

**{¶ 27}** In 1996, as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Public Law No. 104-208, 110 Stat. 3009-546 (enacted September 30, 1996) ("IIRIRA"), Congress, defined the meaning of the term "conviction" for immigration purposes, essentially adopting two elements of the *Ozkok* test:

> The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—
>
> (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and

(ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

8 U.S.C. 1101(a)(48)(A).

{¶ 28} In *In re Roldan-Santoyo*, 22 I. & N. Dec. 512 (BIA 1999), the board, examining the legislative history of the IIRIRA, discussed the significance of Congress's not adopting the third prong of *Ozkok*:

The legislative history of section 322 of the IIRIRA underscores the breadth of the new definition:

"*Ozkok* * * * does not go far enough to address situations where a judgment of guilt or imposition of sentence is suspended, conditioned upon the alien's future good behavior. * * * In some States, adjudication may be "deferred" upon a finding or confession of guilt, and a final judgment of guilt may not be imposed if the alien violates probation until there is an additional proceeding regarding the alien's guilt or innocence. In such cases, the third prong of the *Ozkok* definition prevents the original finding or confession of guilt to be considered a 'conviction' for deportation purposes. This new provision, by removing the third prong of *Ozkok*, clarifies Congressional intent that even in cases where adjudication is 'deferred,' the original finding or confession of guilt is sufficient to establish a 'conviction' for purposes of the immigration laws." See H.R. Conf. Rep. No. 104-828, at 224 (1996).

*Id.* at 518. The board concluded that

> Congress intends that an alien be considered convicted, based on an initial finding or admission of guilt coupled with the imposition of some punishment, even in a state where further proceedings relating to the alien's actual guilt or innocence may be required upon his violation of probation in order for him to be considered convicted under the state law.

*Id.* Thus, even though a defendant can escape a conviction under state law by not violating probation and ultimately having the case dismissed, a conviction for federal-immigration-law purposes occurs upon the admission of facts sufficient to warrant a finding of guilt coupled with a restraint on liberty. The fact that a conviction is not automatic upon the violation of the terms of the diversion agreement was significant under *Ozkok* but is not significant under the statute. "[The] statutory definition of 'conviction' has eliminated the 'further proceedings' consideration from the analysis, thus ending disparate treatment of aliens turning on the technicalities of their states' deferred adjudication procedures." Susan L. Pilcher, *Justice Without A Blindfold: Criminal Proceedings and the Alien Defendant,* 50 Ark.L.Rev. 269, 321 (1997).

{¶ 29} Thus, participation in a diversion program can have unintended consequences for a noncitizen; even though a diversion-program participant avoids a conviction in state court, a noncitizen participant in such a program may still have a conviction on his or her record for immigration-law purposes:

> [A]n admission of guilt coupled with any restraint on liberty—such as having to complete a specified drug or alcohol awareness program—is a conviction under immigration law. If a prosecutor requires an admission of guilt to enter a pretrial diversion program and this admission is recorded, then for immigration purposes the

14

alien's participation in pretrial diversion is deemed a conviction all the same. This is true even if, as a result of successful completion of the diversion program, the prosecutor drops the charges. While the purpose of pretrial programs is to permit first-time offenders to rehabilitate without any criminal record on their file, where admission of guilt is required to participate, the result has been that aliens who participate in these programs have a conviction for immigration purposes and may be deportable depending on the type of crime committed.

(Footnotes deleted.) Dinesh Shenoy & Salima Oines Khakoo, *One Strike and You're Out! The Crumbling Distinction Between the Criminal and the Civil for Immigrants in the Twenty-First Century*, 35 Wm. Mitchell L. Rev. 135, 158-159 (2008).

{¶ 30} Such is the case with Kona. In this case, Kona participated in Cuyahoga County's pretrial diversion program, which was established pursuant to R.C. 2935.36. The statute provides:

(A) The prosecuting attorney may establish pre-trial diversion programs for adults who are accused of committing criminal offenses and whom the prosecuting attorney believes probably will not offend again. The prosecuting attorney may require, as a condition of an accused's participation in the program, the accused to pay a reasonable fee for supervision services that include, but are not limited to, monitoring and drug testing. The programs shall be operated pursuant to written standards approved by journal entry by the presiding judge or, in courts with only one judge, the judge of the court of common pleas * * *.

**{¶ 31}** Ohio's pretrial-diversion-program statute does not require a defendant to admit guilt prior to being admitted into a program, but the Cuyahoga County program that Kona participated in did make that a requirement for entry into the program. A criterion for acceptance into the program at the time Kona entered it was that "[t]he applicant must admit his guilt, in regard to the pending charges, in a written statement." By meeting this requirement, Kona also satisfied the first element of the 8 U.S.C. 1101(a)(48)(A)(i) definition of "conviction": "the alien * * * has admitted sufficient facts to warrant a finding of guilt."

**{¶ 32}** The second element of the definition of "conviction" is that "(ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed." As a participant in the diversion program, Kona was subject to the following requirements:

> 5. As a condition of a personal bond, an applicant shall be placed under the supervision of the Probation Department's Court Supervised Release Program/Diversion Unit.
>
> * * *
>
> 9. The applicant must be willing to make himself available for conferences with a Division Officer * * * between the hours of 8:30 a.m. and 4:00 p.m., unless other arrangements are made.
>
> * * *
>
> 14. The applicant must be willing to pay restitution, fines, court costs, administrative fees, including an offender's fee, which will include a community works service charge, in an amount determined by a Diversion Officer, and/or provide volunteer work to a non-profit community service organization.
>
> * * *

17. The applicant must submit to evaluation and treatment for alcohol and substance abuse or mental health problems. * * *

* * *

18. The applicant must not leave the county of his/her residence without permission from the Division Officer. Written permission must be obtained before leaving the State.

Kona thus suffered a deprivation of liberty, satisfying the second element of the federal definition of "conviction."

{¶ 33} The dismissal of the robbery charges against Kona after his successful participation in Cuyahoga County's diversion program is meaningless under federal immigration law; his admission of guilt yields a conviction for purposes of immigration law. Only if his "conviction" is vacated for substantive or procedural reasons, i.e., through R.C. 2943.031(D), can Kona escape immigration law implications of his admission of guilt.

{¶ 34} There is no dispute about the fact that Kona received no warning from the trial court that preparing and signing an admission-of-guilt form as a requirement to enter Cuyahoga County's diversion program could have a significant effect on his immigration status. R.C. 2943.031 exists to force courts to advise noncitizens that their pleas of guilty or no contest may lead to a conviction that has a serious impact on their immigration status, potentially more serious than any criminal sanction. That is, the statute protects defendants from voluntarily submitting to a conviction without notice of how that act could affect their immigration status. For all relevant purposes, in federal immigration law—about which R.C. 2943.031 exists to provide a warning—there is no functional difference between a guilty or no-contest plea and an admission of guilt. A conviction, as defined in federal law, flows from all three.

**{¶ 35}** Because R.C. 2943.031 requires warning noncitizens of the potential effects of convictions, it is triggered upon a defendant's admission of guilt as part of a pretrial diversion program, since that admission creates a conviction under federal law. R.C. 2943.031 requires courts to inform defendants about the effect not of the plea, but of the conviction that follows the plea. The statute requires the judge to inform the defendant, "[Y]ou are hereby advised that *conviction* of the offense to which you are pleading guilty * * * may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." (Emphasis added.) It is the *conviction* that has consequences in the immigration system. For purposes of R.C. 2943.031, an admission of guilt is tantamount to a guilty plea because a conviction—for federal purposes—follows it.

**{¶ 36}** The very purpose of R.C. 2943.031 demands that admissions of guilt made pursuant to diversion programs be included within its ambit. Otherwise, a defendant amenable to pretrial diversion—whose presence in the program means that, pursuant to R.C. 2935.36, he or she is a person whom the prosecuting attorney believes "probably will not offend again"—becomes susceptible, without warning, to the immigration effects of an admission of guilt; meanwhile, the more serious offender, who is not offered diversion, gets the full benefit of the protections of R.C. 2943.031. Not requiring R.C. 2943.031 protections for defendants admitting guilt in pretrial diversion proceedings also runs contrary to R.C. 2935.36—the defendants deemed to have committed the least serious offenses potentially suffer, without warning, the most serious consequences.

**{¶ 37}** We therefore hold that R.C. 2943.031(A) requires that the trial court provide an advisement to a defendant submitting an admission of guilt for entry into a pretrial diversion program. The court must inform the defendant that the admission may have the consequences of deportation, exclusion from admission to

the United States, or denial of naturalization pursuant to the laws of the United States.

{¶ 38} Pursuant to R.C. 2943.031(D), upon the motion of the defendant, the court must set aside the prior judgment if four factors are fulfilled: (1) the court failed to provide the defendant the advisement before the admission of guilt, (2) the advisement was required, (3) the defendant is not a citizen of the United States, and (4) the conviction for the offense to which a plea was entered results in the defendant's being subject to deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States. We find that the trial court abused its discretion in not finding that all four factors were satisfied in this case. Upon remand, the trial court should set aside the prior judgment by vacating the dismissal, vacating the admission of guilt, and allowing Kona to plead not guilty to the underlying charges.

{¶ 39} We note that there have been changes made to the Cuyahoga County pretrial diversion program since Kona's entry into it in 2006. The diversion packet now has a prominent warning to noncitizens on the application page:

> **\*\*NOTICE: If you are not a citizen of the United States, you are hereby advised that application and/or admission to the Diversion Program may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.**

(Boldface sic.)

{¶ 40} More importantly, the state relates in its brief, "The prosecutor's diversion program has been amended. It now requires a full plea of guilt to be entered on the record, with the plea not accepted by the trial court." At oral argument, the state reiterated that beginning in 2014, defendants entering Cuyahoga

County's pretrial diversion program participate in a plea hearing with a judge. So at least from 2014, noncitizen defendants have been receiving from the trial judge the notice required by R.C. 2943.031 of potential immigration effects of participation in Cuyahoga County's diversion program. Cuyahoga County identified a problem and took steps to rectify it, and we commend it for that.

### Conclusion

{¶ 41} We hold that R.C. 2943.031(A) required the trial court to advise Kona that his admission of guilt made for purposes of entering into Cuyahoga County's pretrial diversion program may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States. Because the trial court failed to give that advisement, and because Kona has sufficiently proved the elements of R.C. 2943.031(D), the trial court must vacate the dismissal of the case against Kona and vacate the admission of guilt that he executed as part of the pretrial-diversion-program process.

{¶ 42} Accordingly, we reverse the judgment of the court of appeals and remand the cause to the trial court.

Judgment reversed,<br>and cause remanded.

O'CONNOR, C.J., and LANZINGER and O'NEILL, JJ., concur.

O'DONNELL and FRENCH, JJ., dissent and would dismiss the cause as improvidently allowed.

KENNEDY, J., dissents and would affirm the judgment for the reasons stated by the court of appeals.

_____

Timothy J. McGinty, Cuyahoga County Prosecuting Attorney, T. Allan Regas, and Diane Smilanick, Assistant Prosecuting Attorneys, for appellee.

Polito, Paulozzi, Rodstrom & Burke, L.L.P., Joseph T. Burke, and Michael G. Polito, for appellant.

Harlan D. Karp, Tina R. Haddad, and Tanya Linetsky, pro se, urging reversal as amici curiae.

Law Offices of Jennifer Peyton, Jennifer I. Peyton, and Daniel Natalie; Margaret Wong and Associates, Co., L.P.A., and Scott Bratton, urging reversal for amicus curiae American Immigration Lawyers Association, Ohio Chapter.

Russell S. Bensing, urging reversal for amicus curiae Ohio Association of Criminal Defense Lawyers.

John T. Forristal, urging reversal for amicus curiae Cuyahoga Criminal Defense Lawyers Association.

_____